## Billiter v. Childers.

(Decided January 4, 1912.)

### Appeal from Grant Circuit Court.

Contracts—Action to Cancel for Fraud.—In this case to recover the
amount paid for stock upon the ground that the purchase was in-
duced by fraud and misrepresentation, no question of law is
presented by the record, and the evidence authorized the trial
court to rule that the plaintiff had failed to make out his case.

O. S. HOGAN, CLORE DICKERSON & CLAYTON for appellant.

A. G. DeJARNETTE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, Billiter, brought this suit against
Robert and R. H. Childers seeking to recover from them
$1,550, stating as the ground of recovery that the Queen
City Manufacturing Company, a corporation organized
under the laws of Ohio with a capital stock of $100,000
divided into shares of $50 each, immediately after its in-
corporation issued to one Tuttleman the entire capital
stock as a consideration for a formula for making an
article called "anti-hot box lubricator" owned by him
and which he transferred to the corporation. That the
formula so transferred was of little or no value, and
composed the only assets of the company as a basis for
the $100,000 of capital stock issued by it. That imme-
diately upon the issual of the stock to Tuttleman, he
transferred certain shares of it to Robert Childers and
a few other persons, who were interested with him as
promoters of the concern, retaining a number of the
shares himself. That from the sale of this stock there
was realized in money only $5,225, the principal part of
which was paid out in salaries. That the corporation
was insolvent, and that Robert and R. H. Childers—.

"Designing and colluding together, to cheat this
plaintiff by selling to this plaintiff a portion of the stock
which had been theretofore issued to said Robert Chil-
ders for no consideration, falsely and fraudulently rep-
resented to the plaintiff that a large portion of the capi-
tal stock of said company had been paid; that it had am-
ple funds and capital to put the lubricant on the market;
that the lubricant was a valuable and salable article and

would sell for large profits and in large amounts, and that said company was in a prosperous condition and would pay large dividends on its stock; that they concealed from him the fact that the stock above mentioned as issued to Gooch, Glasscock, Dickey, Childers and Tuttleman representing $73,750 of said capital, had in fact been issued to them for no consideration; and further concealed from him the fact that they were seeking to sell to him stock theretofore issued to Robert Childers without consideration, and represented and held out to him that the money he paid for said stock would go into the treasury of said company, and add to its capital, and its ability to manufacture and sell said lubricant, and further represented to him that by the sale of said stock they would put him in a position to make large profits from the dividends of said company, and that said stock would rapidly increase in value. * * * That with the fraudulent purpose to cheat him, they sold to him 100 shares of the capital stock of the company, which had theretofore been issued to Robert Childers for no consideration, under the pretense of selling said stock for the benefit of the treasury of said company; and also at the same time pretended to sell to the defendant, Robert H. Childers, 100 shares of the same stock, in order to make it appear the transaction was bona fide, when in fact they made no sale of said stock to said R. H. Childers, and thereby further deceived, overreached and induced plaintiff to believe that the transaction was bona fide, and the stock was valuable; that acting upon said belief, and being misled by the false and fraudulent statements of the defendants above made, this plaintiff did purchase from the defendants 100 shares of the capital stock of the said company, and paid to them therefor $1,550.''

The answer of R. H. Childers was a traverse, and the answer of Robert Childers in addition to being a traverse contained a number of affirmative statements relating to the organization and management of the company.

After the pleadings had been made up, the case went to trial before a jury and at the conclusion of the evidence for the plaintiff the court directed the jury to return a verdict in favor of the defendant, R. H. Childers. After this, the trial proceeded as to the defendant,

Robert Childers, with the result that a judgment was rendered against him for the amount claimed.

This appeal is prosecuted from the ruling of the court in peremptorily instructing the jury to find a verdict in favor of R. H. Childers. It will thus be seen that the only question before us is the correctness of the ruling of the trial court in taking from the jury the case against R. H. Childers.

It appears from the evidence that R. H. Childers is the father of Robert Childers, both of them being well known citizens of Grant County, Kentucky. The appellant, Billiter, also a resident of Grant County, Kentucky, was well acquainted with the Childers, and was actively engaged in business affairs. The company was organized in February, 1909, for the purpose of manufacturing and selling the article which was intended for use in lubricating the axles of railroad cars, wagons, and other vehicles. Although $100,000 of capital stock was issued to the promoters of the concern, only $5,225 was ever paid into the company in cash for the stock issued, and the greater part of this was paid by persons to whom the promoters sold stock that had been issued to themselves. The company never succeeded in establishing a trade for the lubricant, and only a small quantity of it was sold—in short, the enterprise was a failure. Sometime in April, 1909, the appellant visited the factory where the lubricant was made, and learned at least something about the quality and usefulness of the article manufactured, and in some respects informed himself as to the condition of the company. In May, 1909, and indeed at all times after the corporation was organized, the promoters had been endeavoring not only to sell the stock, but to find a market for the article; but, they had not been successful in the accomplishment of either purpose. In May, 1909, in response to a telephone communication from one Glasscock, who was connected with and was one of the promoters of the corporation, appellant and the two Childers went to Cincinnati. Appellant testifies that although he knew the call to Cincinnati had some connection with the corporation, he was not advised as to the exact purpose of it, nor did he discuss the object of the visit before reaching Cincinnati with either of the Childers. When they arrived in Cincinnati, he went to the hotel where Glasscock was stopping, when Glasscock told him that he was expecting a representa-

tive of the Standard Oil Company to buy some stock, but that he did not appear. That after waiting in Glasscock's room for a few hours, he and Bob Childers went to the hotel office, leaving Glasscock in the room. That when they reached the office, Bob Childers tried to sell him the stock, and said to him in the presence of his father, ''Father wants some of that stock and hasn't the money, but you both together could get all the money you wanted by signing your names on a note from the Grant County Deposit Bank,'' and thereupon R. H. Childers said: ''That was what he intended to do, and if I wanted to do it, we would both go in and get the money.'' I told them I didn't know whether I could meet the note or not, and if the stock didn't sell it would cripple me financially; and they assured me that the stock would sell right away, that week I understood. I told him I was as game as he was—that if he wanted to buy stock that way, I would do it, and told him to do for me just whatever he did for his father. Appellant further testified in the same connection that ''Bob said he was certain they were going to sell right away.'' That he then returned to his home in Grant County, and in a few days he met the two Childers, when they told him they had bought 100 shares of stock for him and 100 shares for R. H. Childers—the subscription price being $1,550 for each 100 shares. It also appears that the stock purchased by appellant was issued to him, and that he paid for it $1,-550. The records of the corporation do not show that any stock was ever issued to or transferred to R. H. Childers, although there is testimony to the effect that there was purchased for him by his son, Bob Childers, 100 shares of stock, and that he paid for it $1,550. It is shown that Robert Childers was one of the promoters of this concern and actively interested in the sale of its stock, but there is no evidence that the appellee, R. H. Childers had any connection whatever with it until he bought the stock as before stated. Whatever representations were made to the appellant concerning the value of the stock or the assets or property of the company or its prospects, were made by Robert and not R. H. Childers. Nor is there any evidence that R. H. Childers was acting in collusion with Robert in the sale of the stock to appellant, or that Robert Childers acting for him made any misrepresentations or statements to appellant concerning the transaction. Indeed, we get the impres-

sion from the evidence that appellant knew as much, if not more, about the corporation and its affairs than R. H. Childers did. The only statement that R. H. Childers ever made to appellant that might be considered as inducing him to purchase stock, was that part of appellant's evidence before quoted, in which R. H. Childers said when the subject of getting the money to buy stock was mentioned, that "that was what he intended to do; if he wanted to do it, we would both go in and get the money; * * * and they assured me the stock would sell right away." Appellant may have been deceived and mislead by statements made by Robert Childers, but, assuming that he was, there is no evidence showing that he was misled or deceived by or that any fraud was practiced upon him by R. H. Childers.

The theory of counsel for appellant is that Robert and R. H. Childers fixed up a scheme to induce the appellant to believe that R. H. Childers would take the same amount of stock that he did without any intention on the part of Robert H. Childers to purchase any stock, and that appellant being so deceived, subscribed and paid for the stock purchased for him, while Robert H. Childers did not subscribe or pay for any stock. That R. H. Childers consented that his son might use him as an instrument to aid him in practicing a fraud upon appellant; and, that as a part of the plan, R. H. Childers received at least some of the money that appellant paid for the stock. Counsel point out some circumstances from which they draw the conclusion that Robert H. Childers was a party to the arrangement by which Bob Childers was enabled to prevail on appellant to purchase the stock; but, in looking to the record, we find no tangible evidence upon which to rest the opinion reached by counsel. After carefully reading and considering the evidence, we do not find anything that would justify us in holding that appellant made out a case for the jury against Robert H. Childers.

Wherefore, the judgment is affirmed.